**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN THE MATTER OF:
OCHOLI OCHALA IREDIA, also known
as "OCHOLI OCHALA,"
"OCHOLI IREDIA," and
"MINUTEMAN PRESS"

CIVIL ACTION NO.  16-5228

Bankruptcy No.  15-18450

DuBois, J.                                                                          March 27, 2017

## M E M O R A N D U M

### I.    INTRODUCTION

This is a bankruptcy appeal. Debtor Ocholi Ochala Iredia ("Debtor") appeals from a

decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania granting

the United States Trustee's ("Trustee") Motion to Dismiss Debtor's bankruptcy case for cause,

with a two-year bar on refiling. Debtor also appeals certain evidentiary decisions made during

the bankruptcy proceedings. For the following reasons, the Court affirms the rulings of the

Bankruptcy Court.

### II.   BACKGROUND

The facts of this case have been previously set forth in the opinion of the Bankruptcy

Court. *In re Iredia*, 556 B.R. 691 (Bankr. E.D. Pa. 2016). In this Memorandum, the Court repeats

only those facts necessary to resolve the issues presently before the Court.

a.  Baystone's 2012 Bankruptcy

On October 19, 2012, Baystone Group, LLC ("Baystone") filed a Chapter 7 bankruptcy

petition ("Baystone Bankruptcy"), which Debtor signed and filed as president and 100% owner

of Baystone. *In re Iredia*, 556 B.R. at 692. During the proceedings, Debtor testified that he

personally owned a Minuteman Press franchise ("MP franchise"). *Id.*

b. Debtor's 2014 Bankruptcy

On October 14, 2014, Debtor filed a *pro se* Chapter 7 personal bankruptcy petition ("2014 Bankruptcy"). *In re Iredia*, 556 B.R. at 692. Debtor attended the first meeting of creditors. *Id*. at 693. However, Debtor failed to attend the next two meetings of creditors, so the Bankruptcy Court dismissed the petition on May 19, 2015. *Id*. Debtor moved to reopen the petition on July 6, 2015, and the Bankruptcy Court granted that Motion on July 27, 2015. *Id*. Debtor attended a September 1, 2015 meeting of creditors, but failed to provide a number of requested documents. *Id*. The Bankruptcy Court therefore continued the meeting until September 30, 2015. *Id*. Debtor failed to attend that meeting, so the Bankruptcy Court continued it until October 14, 2015. *Id*.

Meanwhile, Debtor asked for a conference to address "concerns with the documents requested by the Trustee." *In re Iredia*, 556 B.R. at 693. On October 4, 2015, the Bankruptcy Court held a conference to address Debtor's concerns "by reviewing the role of the Trustee in the Debtor's case and confirming that the Trustee was entitled to request the documents that she sought from the Debtor." *Id*.

Even so, at the next meeting of creditors, on October 14, 2015, Debtor refused to answer the Trustee's questions regarding his ownership interest in the MP franchise. *In re Iredia*, 556 B.R. at 693. Rather, Debtor "directed the Trustee to contact his attorney, but refused to provide the name of his attorney." *Id*. The Trustee adjourned the meeting until November 19, 2015, and requested that Debtor bring certain documents to that meeting. *Id*. at 694. On October 19, 2015, the Trustee filed a Motion to Dismiss based on Debtor's "evasive, obstructionist and unresponsive" testimony at the meetings of creditors. *Id*. The Trustee amended the Motion on November 9, 2015, to add Debtor's failure to obtain credit counseling within the 180 days prior

to filing as required under Section 109(h)(1). *Id*. After a hearing, on November 18, 2015, the Bankruptcy Court dismissed the petition because of Debtor's failure to timely obtain credit counseling. *Id*.

    c. <u>Debtor's 2015 Bankruptcy</u>

On November 24, 2015, Debtor filed a second *pro se* chapter 7 personal bankruptcy petition. *In re Iredia*, 556 B.R. at 694. Debtor's bankruptcy schedules did not disclose any ownership interest in Minuteman Press Conshohocken LLC ("MPC") or the MP franchise. *Id*. at 695. However, Debtor filed a number of documents that indicated he had some interest in those entities. With respect to the MP franchise, Debtor attached to the bankruptcy petition two bills of sale. *Id*. at 694. The first, dated May of 2009, purported to convey ownership of "Minuteman Press Full Service Printing Center in Conshohocken" and the name "Minuteman Press of Conshohocken" from Charles and Loretta McNally to Debtor. *Id*. The second, dated December 29, 2009, purported to convey ownership of a "marketing services and printing business" in Conshohocken and "the name Minuteman Press of Conshohocken" from Baystone to MPC. *Id*. But Debtor "failed to produce any document that evidence a transfer of ownership of the MP Franchise from himself to Baystone," and Baystone itself, according to records filed with the Department of State, was not even formed until October 12, 2012. *Id*. at 698. In addition, Debtor testified during the Baystone Bankruptcy that, as of 2012, he was the owner of the MP franchise. *Id*. at 692. With respect to MPC, on December 2, 2015, Debtor filed an Operating Agreement which indicated that he was one of MPC's three members and listed Debtor as its resident agent and manager. *Id*. at 695. Debtor simultaneously filed a Statement of Membership Interest indicating that he had a 20% ownership interest in MPC. *Id*.

Based on these inconsistencies, the Trustee requested from Debtor documents relating to MPC and the MP franchise. *In re Iredia*, 556 B.R. at 695. On December 8, 2015, having received no response, the Trustee filed a Motion to Compel Debtor to produce certain documents. *Id*. The Bankruptcy Court held a hearing on January 6, 2016, at which the Bankruptcy Court ordered Debtor to produce the documents by February 6, 2016. *Id*. At that hearing, the Bankruptcy Court and also advised Debtor to obtain counsel within one month, to which Debtor responded "I will do that, yes." *Id*.; Br. of Appellee, App'x Vol. 1, Tr. of Jan. 6, 2016, Hr'g ("Jan. 6 Tr."), at 26:1–9. Based on the production deadline of February 6, 2016, the Trustee continued the initial meeting of the creditors from January 15, 2016, to February 10, 2016, so that the Trustee could review the produced documents before the meeting. *Id*. at 695–96. However, Debtor produced only "some minimal payroll records" before the hearing on February 10, 2016, and at the meeting, Debtor "refused to answer the Trustee's questions without counsel." *Id*. at 696. The Trustee therefore continued the meeting to March 11, 2016. *Id*.

On February 18, 2016, the Trustee filed a Motion for an Order Finding the Debtor in Contempt ("Contempt Motion") based on Debtor's failure to comply with the production order. *In re Iredia*, 556 B.R. at 696. On February 22, 2016, the Trustee filed a Motion to Dismiss based on Debtor's bad faith, and sought a two-year bar on refiling of petitions. *Id*. Debtor filed an Objection to the Trustee's Motions on March 3, 2016, stating that he had turned over all documents to which he had access, and arguing that he did not intend to conceal any assets and that the Trustee had all the information she needed to value his assets. *Id*. at 697. The Bankruptcy Court held a hearing on April 13, 2016, on both Motions, at which Debtor appeared *pro se*. *Id*. During the hearing, Debtor admitted that he did not produce certain documents, explaining that "he either could not understand what information was being requested or could not afford to

employ an accountant to prepare them." *Id.* at 698; Br. of Appellee, App'x Vol. 3, Tr. of Apr. 13, 2016, Hr'g ("Apr. 13 Tr."), at 26:1–9. "There was insufficient time" for Debtor to cross-examine the Trustee, so the hearing was continued to May 4, 2016. *In re Iredia*, 556 B.R. at 698.

On April 21, 2016, Debtor obtained counsel. *In re Iredia*, 556 B.R. at 697. On May 3, 2016, the day before the scheduled hearing on the Trustee's Motions, Debtor submitted amendments to all of his bankruptcy schedules and turned over more than 600 documents to the Trustee. *Id.* At the May 4, 2016, hearing, Debtor requested adjournment to review the transcripts of past meetings of creditors and hearings. *Id.* The Bankruptcy Court denied that request. *Id.* Debtor also sought to introduce the amended schedules and the 600 documents into evidence, and to keep the record open for the transcripts, but the Bankruptcy Court denied those requests as well. *Id.*

At the hearing of May 4, 2016, the Trustee testified to a number of inconsistencies relating to Debtor's income and ownership of the MP franchise. *Id.* at 698. For example, despite Debtor's claim that he did not own the MP franchise, the Trustee obtained four documents from Minuteman Press, the franchisor, identifying Debtor as the franchisee. *Id.* The Trustee further testified that Minuteman Press, when contacted by the Trustee, stated that its franchise agreements prohibit assignment, and that it had not consented to any transfer of the MP franchise. *Id.* On September 16, 2016, the Bankruptcy Court granted the Trustee's Motion to Dismiss with a two-year bar on refiling, and denied the contempt motion. Debtor appealed that decision to this Court on December 14, 2016.

## III.   STANDARD OF REVIEW

A district court reviews the Bankruptcy Court's "findings of fact for clear error and its legal conclusions *de novo.*" *In re Pransky*, 318 F.3d 536, 542 (3d Cir. 2003). A district court

reviews the "Bankruptcy Court's decision to dismiss the bankruptcy case as a bad faith filing for abuse of discretion." *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). Similarly, the district court reviews the Bankruptcy Court's decision to enjoin a party from future bankruptcy filings for abuse of discretion. *Ross v. AmeriChoice Fed. Credit Union*, 530 B.R. 277, 290 (E.D. Pa. 2015). Finally, acting as an appellate court, the district court reviews the Bankruptcy Court's decision to "to admit or exclude evidence for abuse of discretion." *United States v. Starnes*, 583 F.3d 196, 213 (3d Cir. 2009). "An abuse of discretion occurs when the court bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (citation and quotation marks omitted).

## IV.     DISCUSSION

### a.  Dismissal and Two-Year Bar on Refiling

Debtor first argues that the Bankruptcy Court abused its discretion by dismissing his case with a two-year bar on refiling. A bankruptcy court may dismiss a Chapter 7 bankruptcy case "only for cause." 11 U.S.C. § 707(a). In interpreting Section 707(a), the United States Court of Appeals for the Third Circuit held that a bankruptcy court has discretion to dismiss a petition for cause if the petitioner "has abused the provisions, purpose, or spirit of the bankruptcy law," and "fails to demonstrate his good faith in filing." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). If the trustee "calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." *Id*. (citations omitted). Similarly, a bankruptcy court may, for cause, bar the debtor from "the filing of a subsequent petition." 11 U.S.C. § 349(a). Since the standard for both dismissal and a bar on refiling is "for cause," the Court analyzes the two issues simultaneously.

6

The Trustee has alleged bad faith in this case. *In re Iredia*, 556 B.R. at 699. Despite acknowledging that he has the burden "to demonstrate his good faith in filing," Debtor makes no argument that he has met that burden. Br. of Appellant at 9 (quoting *In re Tamecki*, 229 F.3d at 207). Instead, Debtor emphasizes the fact that he proceeded *pro se* for much of the case, and that his failures were based on lack of knowledge, misunderstanding, or reasonable belief that he required the assistance of counsel. Brief of Appellant at 10–15. For example, Debtor urges the Court to consider the allegations of bad faith "in light of the fact that the Debtor is a lay person and was operating without the assistance of an attorney." *Id*. at 10. But Debtor points to no legal basis for such an approach. Rather, "[a] *pro se* debtor still must comply with the requirements of the Bankruptcy Code." *In re Atiyeh*, 2013 WL 56061, at *3 (E.D. Pa. Jan. 3, 2013).

The Bankruptcy Court's determination that Debtor failed to demonstrate his good faith is well supported by the Bankruptcy Court's factual findings, which are grouped into four categories.[1] *In re Iredia*, 556 B.R. at 700–03. This Court addresses each category of factual findings in turn.

First, the Bankruptcy Court found that Debtor's "repeated refusal to answer the Trustee's questions" at meetings of creditors constituted bad faith. Debtor was specifically instructed during Debtor's 2014 Bankruptcy "that the Trustee had a right to ask questions and instructed him that he had a duty to answer the Trustee's questions." *Id*. at 700. And during Debtor's 2015 Bankruptcy, at the meeting of creditors of February 10, 2016, Debtor explained that he did not

---

[1] Under the clearly erroneous standard, an appellate court must "accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). Debtor does not contest the truth of the Bankruptcy Court's factual findings, and the Court sees no basis in the record for concluding that those findings are clearly erroneous.

want to answer questions without an attorney. *Id*. at 701. However, the Bankruptcy Court had

"urged" Debtor to retain counsel on January 6, 2016, and Debtor had responded that he would do

so. *Id*. The Bankruptcy Court was not persuaded by Debtor's explanations, and found that he had

"deliberately obstructed" the Trustee's actions and "abused the bankruptcy process." *Id*.

      Second, the Bankruptcy Court found that Debtor's failure to comply with the Trustee's

document request and the Bankruptcy Court's subsequent production order constituted bad faith.

*In re Iredia*, 556 B.R. at 701. Debtor received the Trustee's document request on November 30,

2015, and was ordered by the Bankruptcy Court to produce the requested documents by February

6, 2016. *Id*. Yet by February 10, 2016, Debtor had produced only "some minimal payroll

records." *Id*. at 697. On March 3, 2016, Debtor explained that he "turned all of the documents in

[his] possession or that [he had] access to over to the [Trustee]." *Id*. However, on May 3, 2016,

Debtor produced over 600 documents. *Id*. at 701. Based on these events, the Bankruptcy Court

did not find "Debtor's explanations for his failure to respond to the Production Order credible,"

and concluded that his failure "evince[d] a deliberate effort to conceal his assets and income

from the Trustee." *Id*. at 701–02.

      Third, the Bankruptcy Court found that Debtor misrepresented his ownership of the MP

franchise and MPC. *In re Iredia*, 556 B.R. at 702. Debtor attached to his petition a bill of sale

dated May of 2009 purporting to convey ownership of "Minuteman Press Full Service Printing

Center in Conshohocken" and the name "Minuteman Press of Conshohocken" from Charles and

Loretta McNally to Debtor. Also attached to the petition was a bill of sale dated December 29,

2009, purporting to convey the MP franchise from Baystone to MPC. *Id*. at 702. Yet during

Baystone's Bankruptcy, in 2012, Debtor testified that he personally owned the MP franchise. *Id*.

The Bankruptcy Court found the December 29, 2009 bill of sale "incredible" based on Debtor's

past testimony. *Id*. The Court further found that the bill of sale "directly conflicts with . . . the [MP] Franchise Agreement, the Debtor's 2010 personal tax returns, and Department of State records," which indicated that Baystone was not created until 2012. *Id*. When confronted with this discrepancy, Debtor "acknowledged that the documents contradicted each other," yet provided "no further explanation." *Id*. Based on the inconsistencies and the complete lack of any explanation by Debtor, the Bankruptcy Court concluded that Debtor "deliberately misrepresented his ownership interest in the MP Franchise," constituting "abuse[] of the bankruptcy process and bad faith." *Id*.

Fourth, the Bankruptcy Court found that Debtor's filings and other documents were so inaccurate and inconsistent as to constitute bad faith. *In re Iredia*, 556 B.R. at 702. For example, the Court found that Debtor "produced three 1099s that reflected conflicting incomes for 2014" which Debtor "refused to explain," and that Debtor only disclosed his membership interest in MPC in May of 2016 after neglecting to do so in prior bankruptcy schedules. *Id*. at 703. The Bankruptcy Court found these inconsistencies and Debtor's lack of explanation to be further evidence that he acted in bad faith. *Id*.

In short, Debtor presented inconsistent evidence relating to his ownership of the MP franchise and MPC, repeatedly refused to cooperate with the Trustee, and even failed to comply with the Bankruptcy Court's production order. This evidence supports the Trustee's determination that Debtor Bankruptcy Court did not abuse discretion "abused the provisions, purpose, or spirit of the bankruptcy law." *In re Tamecki*, 229 F.3d at 207. After the Trustee alleged Debtor was acting in bad faith, Debtor had the burden of proving his good faith. *Id*. The Bankruptcy Court concluded that Debtor did not meet his burden of proving his good faith. Based on Debtor's near complete lack of an explanation, this Court cannot say that the

Bankruptcy Court's decision was "base[d] . . . on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015). Thus, the Court concludes that the Bankruptcy Court did not abuse its discretion in dismissing his case with a two-year bar on refiling, and denies Debtor's appeal of the Bankruptcy Court's decision to dismiss his petition.

    b.  <u>Evidentiary Issues</u>

Next, Debtor argues that the Bankruptcy Court abused its discretion in refusing to admit certain documents and amended bankruptcy schedules into evidence during the hearing of May 4, 2016, and in refusing to keep the record open in order for Debtor to enter into the record the transcripts of the meetings of creditors.[2] Acting as an appellate court, the district court reviews the Bankruptcy Court's decision to "to admit or exclude evidence for abuse of discretion." *United States v. Starnes*, 583 F.3d 196, 213 (3d Cir. 2009). Evidentiary decisions should be overturned only if they are "arbitrary, fanciful or clearly unreasonable." *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007) (citation omitted).

    i.  *Exclusion of Documents*

Debtor specifically appeals the Bankruptcy Court's refusal to admit Debtor's amendments to his bankruptcy schedules and over six hundred documents (together, "the documents") that Debtor provided to the Trustee on May 3, 2016, the eve of the hearing on the Trustee's Motions. Debtor argues that each decision constitutes an abuse of discretion under

---

[2] The Trustee argues that Debtor's arguments are waived because Debtor never made an offer of proof as to the substance of the documents, as required by Fed. R. Evid. 103(a)(2). *See Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1352 (3d Cir. 1989). However, Rule 103(a)(2) permits a party to claim error if the "substance was apparent from the context" of the documents. Here, the documents in question were documents requested by the Trustee and amended bankruptcy schedules, and the transcripts were of meetings that the Trustee attended. Given that context, the Court concludes that the substance of the documents was apparent, and permits Debtor to claim error as to the exclusion of the evidence.

Federal Rule of Evidence 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Debtor argues that the documents are relevant. Specifically, Debtor notes that one factual basis for the Bankruptcy Court's conclusion that Debtor acted in bad faith was his "failure to provide responsive documents." Br. of Appellant at 18; *see In re Iredia*, 556 B.R. at 701. Given that factual basis, Debtor argues that the very fact that he produced the documents undermines the Bankruptcy Court's conclusion. This argument fails. It was Debtor's failure to produce the documents *in a timely manner* that evinced his bad faith. Debtor's tardy production of the requested documents does nothing to explain his earlier failure to produce the documents. It was not "clearly unreasonable," *Moyer*, 473 F.3d at 542, for the Bankruptcy Court to exclude the documents. The Court therefore rejects Debtor's argument, and affirms the Bankruptcy Court's decision to exclude the documents.

## ii. *Closing the Record*

Finally, Debtor argues that the Bankruptcy Court's refusal to keep the record open after the hearing of May 4, 2016, in order for Debtor to obtain and submit the transcripts of the various meetings of creditors, was "clearly unreasonable." Br. of Appellant at 20.

During the hearing of May 4, 2016, Debtor argued that he was unable to arrange to have the transcripts of the meetings of creditors prepared in time for the hearing. Br. of Appellee, App'x Vol. 5, Tr. of May 4, 2016, Hrg. ("May 4 Tr."), at 18:16–23. The Court responded that the failure was "no one's fault but [Debtor's]," and that Debtor "had the opportunity months ago" to obtain the transcripts. May 4 Tr. at 18:24–25, 19:2–3, 24:4–12. The Bankruptcy also noted that if

Debtor wished to contradict the Trustee's testimony regarding the meetings of creditors, Debtor could provide direct testimony. *Id*. at 24:2–21.

On appeal, Debtor argues that the Bankruptcy Court "failed to acknowledge the knowledge and resources that are required in order for transcripts from a meeting of creditors to be prepared." Br. of Appellant at 20. Debtor again emphasizes that he "was *pro se* for almost the entirety of the Bankruptcy Case," was "unfamiliar with the procedure" for obtaining a transcript of the meetings of creditors, and that Debtor's inability to obtain the transcripts in time was "due to the expense involved." *Id*.

Debtor is correct that the transcripts of the meetings of creditors might have been probative of his good faith or bad faith at those meetings. However, the Court rejects any argument hinging on Debtor's *pro se* status. On January 6, 2016, the Bankruptcy Court advised Debtor to obtain counsel within one month, and Debtor responded "I will do that, yes." *In re Iredia*, 556 B.R. at 695; Jan. 6 Tr. at 26:1–9. By February 10, 2016, Debtor had not obtained counsel, so he asked the Court to extend his time to retain counsel until February 29, 2016. *In re Iredia*, 556 B.R. at 696. Debtor failed to appear at the hearing scheduled to address his request on March 9, 2016. *Id*. The Bankruptcy Court gave Debtor "every opportunity to have an attorney" during the proceedings, yet Debtor failed to obtain counsel until April 19, 2016—some three and a half months after the Court advised him to do so. May 4 Tr. at 10:15–16, 15:10–14. Given this significant delay, it was not "clearly unreasonable," *Moyer*, 473 F.3d at 542, for the Bankruptcy Court to close the record. The Court rejects Debtor's argument and affirms the Bankruptcy Court's decision.

## V.    CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's Opinion of September 16, 2016. An appropriate order follows.